**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**EUGENE C. HOLLANDER**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JUSTIN L. HARGROVE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 67A01-1103-CR-112 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PUTNAM CIRCUIT COURT
The Honorable Matthew L. Headley, Judge
Cause No. 67C01-1004-FA-54

**January 27, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Justin L. Hargrove appeals his conviction of Class A felony attempted murder,[1] Class D felony resisting law enforcement,[2] and Class D felony criminal recklessness.[3] He presents two issues for our review:

1.  Whether the trial court improperly allowed the State to strike the only African-American member of the jury pool; and

2.  Whether the prosecutor committed misconduct during closing argument.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On April 8, 2010, the State charged Hargrove with Class A felony attempted murder, Class D felony resisting law enforcement, Class D felony receiving stolen property,[4] and Class D felony criminal recklessness. Hargrove's jury trial began January 18, 2011.

During *voir dire*, the State moved to strike the only African-American member of the jury pool. Hargrove challenged the strike, and the State explained Hargrove's prosecutor had been the State's counsel during that prospective juror's trial for intimidation. Over Hargrove's objection, the trial court allowed the State to strike that juror.

During closing arguments, the prosecutor made two statements regarding his role as a prosecutor, and the role of the jury. He stated, "I am representing our community. I represent every person in our society. In fact the final decision when we get to hear the issue

---

[1] Ind. Code § 35-42-1-1(1) (murder); Ind. Code § 35-41-5-1 (attempt).
[2] Ind. Code § 35-44-3-3(a)(3).
[3] Ind. Code § 35-42-2-2(b)(1).
[4] Ind. Code § 35-43-4-2(b).

here today is that you folks and our society have determined what you can and cannot do in the community." (Tr. at 667.) He also told the jury it was responsible for deciding if Hargrove's "conduct in our society is acceptable or not." (*Id*. at 686.)

The jury found Hargrove guilty of Class A felony attempted murder, Class D felony resisting law enforcement, and Class D felony criminal recklessness. The trial court entered the convictions and sentenced Hargrove to an aggregate sentence of forty-four years with forty-three years executed and one year on probation.

## DISCUSSION AND DECISION

1.  *Batson* Challenge

Hargrove argues the trial court violated *Batson v. Kentucky*, 476 U.S.79, 89 (1986), when it allowed the State to strike the only African-American member of the jury pool. Pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, a party cannot strike a prospective juror based solely on the juror's race. *Id.* When a party raises a *Batson* challenge, the trial court must engage in a three-part test. *Highler v. State*, 854 N.E.2d 823, 826 (Ind. 2006). First, the trial court must determine "whether the defendant has made a *prima facie* showing that the prosecutor exercised a peremptory challenge on the basis of race." *Id*. at 826-27. Second, "the burden shifts to the State to present a race-neutral explanation for striking the juror." *Id*. at 827. Third, the trial court must evaluate "'the persuasiveness of the justification' proffered by the prosecutor, but 'the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.'" *Id*. at 828 (quoting *Purkett v. Elem*, 514 U.S. 765, 768

3

(1995), *reh'g denied*). We afford great deference to the trial court's decision that a prosecutor's motivation for striking a juror was not improper, and we reverse only if the trial court's decision was clearly erroneous. *Id*.

The first prong of the test, *prima facie* evidence of racial discrimination, was satisfied because the State struck the only African-American member of the juror pool. *See McCants v. State*, 686 N.E.2d 1281, 1284 (Ind. 1997) (holding "removing the only prospective African-American juror . . . raise[s] an inference that the juror was excluded on the basis of race").

The burden then shifted to the State to provide a race-neutral reason for striking the potential juror. During *voir dire*, the prosecutor indicated he struck the prospective juror because he "prosecuted her for intimidation . . . [and] I'd never keep any person that I prosecuted." (Tr. at 62.) Once the jury was seated, the trial court reaffirmed the State's reason for striking the African-American juror:

> COURT: OK, we're on the record. The jury has been seated. We just want to make sure we are making a record regarding the striking of one of the jurors that was an African American and the State struck her for challenge on peremptory challenge and can you state your reason for the reason Prosecutor, Deputy Prosecutor, Chief Deputy Prosecutor I will get it straight, Mr. Long.
>
> MR. LONG: Judge the reason we would advise is one she had a criminal record and she was convicted of intimidation here in this county in 2005 which means that our office would, Mr. Bookwalter was the sitting prosecutor and would have prosecuted this case. Additional [sic] I believe she testified or spoken [sic] during voir dire that she had a background in criminal justice and we were concerned that that [sic] information and the knowledge she possessed would become a problem back in deliberations with the jury.

4

MR. BOOKWALTER:    In addition Judge[,] Rebecca O'Neal[,] who was juror number five, we struck her for the exact same reason. She had a criminal record early when I was prosecutor and we struck her for the same reasons.

(*Id*. at 131) (format altered).  After evaluating the State's proffered reasons for striking the African-American juror, the trial court found, "the reason for the strike on the peremptory was race neutral and that all of the other people that have criminal convictions in which Mr. Bookwalter was a prosecutor[,] he has struck from the jury list as well and we will proceed on with trial at this time."  (*Id*. at 132.)

Hargrove argues the State's reason for striking the African-American juror was "merely pretext" (Br. of Appellant at 15) because the prosecutor based his assertion on the jury questionnaire, and not on *voir dire* questioning to determine whether the potential juror might be prejudiced by prior contact with the prosecutor.  We disagree.

The record reflects the trial court's adherence to and careful application of the *Batson* test.  Hargrove has not cited legal authority to support his premise the State was required to question the juror before striking her, or that an answer on a jury questionnaire is an insufficient basis for striking a potential juror.  That the prospective juror had a criminal record and had been prosecuted by the person who was responsible for prosecuting Hargrove is a race-neutral reason.  *See Douglas v. State*, 636 N.E.2d 197, 199 (Ind. Ct. App. 1994) (State could strike the only African-American in the jury pool because her child had previously been prosecuted by the State).  Therefore, the trial court did not abuse its discretion in finding the State provided a credible race-neutral reason for striking the only African-American member of the jury pool.

2. <u>Prosecutorial Misconduct</u>

In reviewing a claim of prosecutorial misconduct, we must determine: (1) whether the prosecutor engaged in misconduct; and if so, (2) whether the misconduct had a probable persuasive effect on the jury. *Ritchie v. State*, 809 N.E.2d 258, 268 (Ind. 2004), *reh'g denied*. A claim of improper argument to the jury is measured by the probable persuasive effect of any misconduct on the jury's decision and whether there were repeated occurrences of misconduct that would evince a deliberate attempt to improperly prejudice the defendant. *Id.* at 269.

Hargrove did not object to the prosecutor's statements. Failure to object to the alleged misconduct precludes appellate review of the claim, *Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2002), unless the alleged misconduct amounts to fundamental error. *Id.* To prevail on such a claim, the defendant must establish not only the grounds for prosecutorial misconduct but also the additional grounds for fundamental error. *Id.* at 818. To be fundamental error, the misconduct must have made a fair trial impossible or been a clearly blatant violation of basic and elementary principles of due process that presents an undeniable and substantial potential for harm. *Id.* at 817.

Hargrove asserts two statements during the prosecutor's closing argument were misconduct that made a fair trial impossible. First, at the beginning of his closing statement, the prosecutor stated:

> It's the State of Indiana versus Justin Hargrove. Basically I am representing our community. I represent every person in our society. In fact the final decision when we get to hear the issue here today is that you folks and our society have determined what you can and cannot do in the community.

6

(Tr. at 667.) During his rebuttal argument, the prosecutor also said:

> Thank God we have police officers like that. I look at our department and I'm fifty six years old and I'm not going to be around. Let me tell you, I hope thirty years from now we have a thirty year officer in our community that has shown us the last thirty years what a (inaudible). And your job really here today beyond this case is to decide whether [sic] in our society where the line gets drawn. You know when I became prosecutor six years ago the FOP gave me this and I didn't know what it was. Jared Baugh gave it to me. Jared's Dad was killed in the line of duty and that's the line [sic] blue line. That's what separates us from them. That's what separates law from lawlessness. And that's really what this case is about. Our society doesn't put up with this. We don't shoot AR15s off in celebrations. We have a line [sic] blue line that protects us and you folks are going to decide today where that line is at. Is this conduct in our society acceptable or not[?] Thank you.

(*Id*. at 686.) Hargrove argues both statements encouraged the jury to convict him on reasons besides his guilt.

The State argues the prosecutor's statements were akin to those in *Brennan v. State*, 639 N.E.2d 649, 652 (Ind. 1994), in which the prosecutor told the jury Brennan was a "cold-blooded killer" and the jury should "convict the defendant because such a conviction would be just." *Id*. Our Indiana Supreme Court held the comments were appropriate because the prosecutor

> did not try to convey to the jury that he knew something that was not presented in evidence nor did he make false statements concerning the evidence which was presented. It should be obvious to all that the prosecutor is there to convince the jury of the defendant's guilt. His observations on his duty and [the jury's] duty were accurate.

*Id*.

7

We agree the prosecutor's statements regarding the jury's duty to decide Hargrove's guilt are similar to those in *Brennan*. We therefore decline to hold the prosecutor's statements constituted misconduct. *See also Johnson v. State*, 436 N.E.2d 796, 797 (Ind. 1982) (holding prosecutor saying defendant's act was a "type of activity we cannot accept in this community" was "a comment on the character of the offense and did not constitute prosecutorial misconduct").

## CONCLUSION

We find no abuse of discretion in the trial court's finding the State had a race-neutral reason for striking the only African-American in the jury pool. In addition, the prosecutor did not commit misconduct during his closing argument when he reminded the jurors of their duty and made comments regarding the character of the charged offenses. Accordingly, we affirm.

Affirmed.

NAJAM, J., and RILEY, J., concur.